UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

against

RONNIE GONZALEZ,

Defendant.

No. 11-cr-487-3 (RJS)

STATEMENT OF REASONS

RICHARD J. SULLIVAN, Circuit Judge:

As stated on the record at the resentencing proceeding held on February 15, 2023, the Court resentenced Ronnie Gonzalez to an aggregate term of 26 years' imprisonment on Counts One and Two of the Indictment.  In reaching this decision, the Court determined that Gonzalez's total offense level under the advisory United States Sentencing Guidelines is 43 and that his criminal history placed him in Criminal History Category VI.  Although this would ordinarily result in a Guidelines range of life imprisonment, Gonzalez's range was capped at 40 years because the statutory maximum sentence for each count of conviction was 20 years.  *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."); *see also* § 5G1.2, App. Notes 1, 3(A).  The Court explained its reasons for imposing a below-Guidelines sentence in this matter.  The Court also stated that, even if

it were determined that the Court's Guidelines calculation was erroneous, it would still have imposed a total term of imprisonment of 26 years in light of the objectives of sentencing set forth in 18 U.S.C. § 3553(a).  The Court's reasoning, as stated on the record during the resentencing proceeding, is amplified below.

The base offense level for a violation of 18 U.S.C. § 1951 is 20 under section 2B3.1 of the Guidelines.  The cross reference under section 2B3.1(c) further provides that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply [section] 2A1.1 (First Degree Murder)."   U.S.S.G. § 2B3.1(c). Section 2A1.1, in turn, provides a base offense level of 43.  *See* U.S.S.G. § 2A1.1(a).

Here, "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111."  U.S.S.G. § 2B3.1(c).  As the grand jury charged in the indictment and as the trial jury found beyond a reasonable doubt after deliberations, on or about December 1, 2007, Gonzalez and his coconspirators "caused the death of Bernardo Garcia[] by discharging, and aiding and abetting the discharge, of a firearm at Garcia," which "killing is murder as defined in Title 18, United States Code, [s]ection 1111(a)." Indictment at 3; *see also* Trial Tr. 1950 ("The third element that the government must prove beyond a reasonable doubt on Count Three is that the defendant you are considering caused the death of another person through the use of that firearm . . . . The fourth element of Count Three that the government must prove beyond a reasonable doubt is

that the death of a person qualifies as a murder . . . [under] section 1111 of the federal criminal code."). Given the jury's finding beyond a reasonable doubt that Gonzalez "caused the death of [Garcia] through the use of [a] firearm" and that "the death of [Garcia] qualifie[d] as a murder . . . [under] section 1111 of the federal criminal code," Trial Tr. 1950, section 2B3.1(c)'s cross reference plainly applies to Gonzalez, *see, e.g.,* *United States v. Bryant*, No. 18-cr-92 (WFK), 2023 WL 1869541, at \*4, 10 (E.D.N.Y. Feb. 9, 2023) (applying section 2B3.2(c)'s cross reference to a defendant whose coconspirator shot and killed a victim during an extortion attempt, even though the coconspirator "stated [that] he did not mean to shoot anybody" after the crime); *United States v. Hernandez-Lora*, No. 10-cr-776-1 (RWS), 2013 WL 5366067, at \*6 (S.D.N.Y. Sept. 23, 2013) (applying section 2B3.1(c)'s cross reference because one of the defendant's coconspirators suffocated the victim to death while attempting to restrain him during the robbery). Although the Second Circuit's guidance on this issue is sparse, other courts of appeals have consistently affirmed the district court's application of section 2B3.1(c)'s cross reference in cases similar to this. *See, e.g., United States v. Rodriguez-Adorno*, 695 F.3d 32, 43 (1st Cir. 2012) (holding that it was "enough to apply the murder cross reference" to the defendant when "the victim was shot and killed by [the defendant]'s coconspirator in the course of the carjacking"); *United States v. Williams*, 342 F.3d 350, 352, 357 (4th Cir. 2003) (concluding that "the murder enhancement under [section] 2B3.1(c)" was applicable to the defendant because his coconspirator "killed a drug dealer" during their attempt to

"rob [rival] drug dealers for their drugs and money"); *United States v. Harris*, 104 F.3d 1465, 1474 (5th Cir. 1997) (affirming the district court's application of section 2B3.1(c)'s cross reference where the defendant's coconspirator shot and killed a bystander "in the aftermath of the bank robbery" at the robbers' rendezvous point); *United States v. Harris*, 238 F.3d *777*, 779 (6th Cir. 2001) (holding that "the cross[ ]reference found in [section] 2B3.1(c)(1)" applied to both defendants because one of them shot a customer during their attempted robbery of a convenience store); *see also United States v. Weasel Bear*, 356 F.3d 839, 841 (8th Cir. 2004) ("The cross reference in [section] 2B3.1(c)(1) to the first degree murder guideline in [section] 2A1.1 requires a sentencing court to consider the full context of the defendant's offense and to account for *any* killing in the course of a federal robbery." (emphasis added)).

Gonzalez nevertheless argues on resentencing that the killing of Garcia does not constitute his "relevant conduct" for purposes of applying section 2B3.1(c)'s cross reference, because it falls outside the definition of relevant conduct under section 1B1.3(a)(1). The Court disagrees.

Section 1B1.3(a)(1) provides that "cross references in Chapter Two . . . shall be determined on the basis of the following":

> (A) all acts and omissions committed, aided, abetted . . . by the defendant; and

> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others,

whether or not charged as a conspiracy), all acts and omissions of others that were –

    (i) within the scope of the jointly undertaken criminal activity,

    (ii) in furtherance of that criminal activity, and

    (iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a); *see also United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995) ("In order for a district court to sentence a defendant on the basis of criminal activity conducted by a coconspirator," a district court must find: "1) that the acts were within the scope of the defendant's agreement and 2) that they were foreseeable to the defendant.").

Based on the evidence adduced at trial, the jury found beyond a reasonable doubt that Gonzalez "caused the death of [Garcia] through the use of a firearm" either under a conspiracy or an aiding-and-abetting theory. *See* Trial Tr. 1944–56. Beginning with the conspiracy theory, the Court instructed the jury that Gonzalez may be convicted on Count Three if, among other things, the jury found "beyond a reasonable doubt (1) that [Gonzalez] was a member of the robbery conspiracy charged in Count One"; (2) that "the crime charged in Count Three . . . was committed pursuant to the common plan and understanding [that the jury] found to exist among the conspirators"; (3) that Gonzalez

"was a member of the conspiracy at the time the crime charged in Count Three was committed"; and (4) that Gonzalez "could reasonably have foreseen that the crime charged in Count Three might be committed by his coconspirators."  Trial Tr. 1954–56.

Alternatively, the Court also instructed the jury that it could find Gonzalez "guilty of the substantive crime charged in Count Three [if] the government prove[d] beyond a reasonable doubt that [Gonzalez] personally committed or aided and abetted the commission of the substantive crime charged."  Trial Tr. 1955–56.  In explaining aider-and-abettor liability, the Court instructed the jury that it "may find [Gonzalez] guilty of the substantive crime" if (1) "another person actually committed the crime"; (2) Gonzalez "willfully and knowingly associate[d] himself in some way with the crime"; and (3) Gonzalez "willfully and knowingly sought by some act to help make the crime succeed."  Trial Tr. 1953.

The jury found Gonzalez guilty on Count Three, *see* Trial Tr. 2005, and although the verdict form did not require the jury to specify under which theory (conspiracy or aiding and abetting or both) the jury relied on, there was ample evidence in the record to support the jury's verdict under either theory beyond a reasonable doubt.  Indeed, it is telling that Gonzalez did not challenge the sufficiency of the evidence on Count Three as part of his direct appeal or in his initial habeas petition.[1]  *See United States v. Reed*, 570 F.

---

[1] Gonzalez's amended petition of course asserted a challenge to Count Three based on *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Taylor*, 142 S. Ct. 2015 (2022), which turned on whether Hobbs

App'x 104 (2d Cir. 2014), *cert. denied sub. nom. Gonzalez v. United States*, 574 U.S. 985 (2014); *see also* Doc. Nos. 106, 160.

In challenging this finding, Gonzalez seizes on a stray line of testimony from Donnell Richardson, the organizer of the robbery and a cooperating witness at trial, who stated that he "didn't think there would be any violence necessary" during the robbery because the targets "were young, weak, [and] frail." Trial Tr. 711. But the trial evidence clearly showed that Gonzalez, Reed, and Johnson rejected Richardson's advice on this point. In fact, Reed – in Gonzalez's presence – repeatedly insisted that guns be brought to the robbery. *See, e.g.*, Trial Tr. 527:23–528:4. And on the day of the robbery, Reed – again in Gonzalez's presence – advised the coconspirators that he was armed and demanded that Richardson supply *another* gun so that John Johnson could also have a gun during the robbery. *See* Trial Tr. 532:12–533:16. When Richardson again reiterated his view that "they didn't need really the other gun," Reed – in the presence of Gonzalez and Johnson – was adamant that "the only way he[] [was] going to do it [was]" to bring with him "[an]other gun." Trial Tr. 535:21–536:1. Richardson ultimately relented and gave his gun to Reed, who handed it to Johnson. Only then did Reed, Johnson, and Gonzalez enter the apartment building to carry out the planned robbery. *See* Trial Tr. 539:5–12. On the basis of this testimony, the jury was justified in concluding that "the

---

Act conspiracy and attempted Hobbs Act robbery constituted *categorical* crimes of violence under sections 924(c) and 924(j). But at no time prior to resentencing did Gonzalez argue that there was insufficient evidence to prove the other elements of the section 924(j) violation charged in Count Three.

scope of the activity to which [Gonzalez] agreed was sufficiently broad to include" the killing of Garcia. *United States v. Getto*, 729 F.3d 221, 234 (2d Cir. 2013).

Gonzalez relies on *United States v. Johnson* to argue that the killing of Garcia was not "within the scope of the specific conduct and objectives embraced by the agreement." 378 F.3d 230, 238 (2d Cir. 2004) (internal quotation marks omitted). But his reliance on *Johnson* is misplaced. In that case, the jury convicted Johnson of conspiring to commit Hobbs Act extortion for his participation in a "labor coalition" that "extort[ed] money and jobs, including the proverbial 'no-show' jobs, from contractors at construction sites in New York City." *Id.* at 234. During the course of the conspiracy, one of Johnson's coconspirators killed a member of a rival labor coalition during a confrontation. At sentencing, the district court determined that the murder constituted Johnson's "relevant coconspirator conduct" and applied the cross reference under section 2B3(c)(1). *Id.* at 235. Among other things, the district court based its determination on the fact (1) that the coconspirator "worked for Johnson"; (2) that Johnson often instructed the coconspirator to "page him with updates"; (3) that "Johnson had instructed [the coconspirator] to ensure protection of [the labor coalition's] interests 'in any way necessary'"; (4) that the coconspirator "informed Johnson that there was trouble" at his work site; (5) that the coconspirator told Johnson, "on an occasion unrelated to the . . . murder," that he was at a work site with his "machine gun"; and (6) "most notably," that "well after [the murder], a third party – *not* Johnson – had recommended to [the coconspirator] that he approach

Johnson to ask for a fee" for the murder. *Id*. at 238–39. The Second Circuit vacated the sentence, concluding that the district court "clearly erred in finding that Johnson was part of an agreement to murder [the victim]," since "there [was] not even a suggestion in the record that Johnson was aware of the third-party recommendation, let alone designed, condoned, or failed to condemn it." *Id*. at 239.

*Johnson* is clearly distinguishable from this case. For starters, "none of the defendants [in *Johnson*] was convicted by the jury of any charge relating specifically to . . . the murder." *Id*. at 234. Here, by contrast, *all* of the coconspirators – including Gonzalez – were convicted by the jury on Count Three, which, as discussed above, included among its elements that he "caused the death of [Garcia] through the use of that firearm" and that Garcia's "death . . . qualifies as a murder . . . [under] section 1111 of the federal criminal code." Trial Tr. 1950. Moreover, the attenuated connection between the appellant and the murder in *Johnson* bears no resemblance to the facts of this case. In *Johnson*, there was no evidence suggesting that Johnson was present at the murder or even had any knowledge of it. Instead, the only connection between Johnson and the murder was Johnson's broad, "supervisory" relationship with the coconspirator. *Johnson*, 378 F.3d at 236. Here, on the other hand, Gonzalez participated in the discussions regarding the use of a firearm during the robbery, *see*, *e.g.*, Trial Tr. 527:23–528:4; was present when Richardson handed Reed a second firearm moments before the robbery, *see* Trial Tr. 535: 21–536:1; and was at the scene acting as the lookout in the armed robbery

when Johnson shot and killed Garcia, *see* Trial Tr. 539–45.  Simply put, the killing of Garcia was an activity "jointly undertaken" by Gonzalez and his coconspirators in furtherance of the planned robbery of a drug spot in broad daylight.  *Studley*, 47 F.3d at 576.  Unlike the appellant in *Johnson*, Gonzalez was neither a dupe nor a peripheral player removed from the action.  He was a full participant who knew that his coconspirators would be carrying weapons and understood the reasonable prospect of the guns being fired and individuals being shot and killed in furtherance of the robbery.

Relying on cherry-picked dicta from *Rosemond v. United States*, 572 U.S. 65, 76–77 (2014), Gonzalez also contends that he "did not aid and abet Johnson's murder of Garcia." Gonzalez Resentencing Mem. at 6.  But when read in full, *Rosemond* clearly supports a finding that Gonzalez "caused the death of Bernardo Garcia[] by . . . aiding and abetting the discharge . . . of a firearm at Garcia."  Indictment at 3.  In *Rosemond*, the Supreme Court held that "[a]n active participant in a drug transaction has the intent needed to aid and abet a [section] 924(c) violation" if he "knows beforehand of a confederate's design to carry a gun."  *Rosemond*, 572 U.S. at 77–78.  The Supreme Court explained that when a defendant has "advance knowledge that the plan included a firearm," he could "attempt to alter that plan or, if unsuccessful, withdraw from the enterprise."  *Id*. at 78.  But if the defendant decides "instead to go ahead with his role in the venture," his decision "shows his intent to aid an *armed* offense."  *Id.*  Here, Gonzalez had "advance knowledge" that his coconspirators would carry two firearms to the planned robbery.  *Id.*  The record

demonstrates that Gonzalez was present when Reed told Richardson that he would bring a gun to the planned robbery and when Reed demanded that Richardson provide another gun.  Trial Tr. 527–45.  Instead of "attempt[ing] to alter" Reed's plan or "withdraw[ing] from the enterprise," Gonzalez decided "to go ahead with his role in the venture" and acted as the lookout when Johnson fired the fatal gunshot at Garcia.  *Rosemond*, 572 U.S. at 78.  Therefore, contrary to Gonzalez's argument, *Rosemond* in fact supports a finding that Gonzalez had "the intent needed to aid and abet [Johnson's] [section] 924(c) violation," *id.*, which the jury found to "qualif[y] as a murder . . . [under] section 1111 of the federal criminal code," Trial Tr. 1950.

Lastly, without citing any authority, Gonzalez argues that the Court may not rely on the jury's determination with respect to Count Three because "[t]he jury's verdict" convicting Gonzalez under section 924(j) is "a nullity" following the Supreme Court's decisions in *Davis* and *Taylor* and the Second Circuit's decision in *Barrett*.  Gonzalez Resentencing Mem. at 8.  The Court disagrees.  *Davis*, *Taylor*, and *Barrett* concern only one element of Gonzalez's conviction under Count Three – whether "robbery conspiracy and attempted robbery . . . qualify as crimes of violence" under section 924(c).  Trial Tr. 1950; *see also United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (holding that section 924(c)'s residual clause is unconstitutionally vague); *United States v. Taylor*, 142 S. Ct. 2015, 2025 (2022) (holding that attempted Hobbs Act robbery does not qualify as a categorical crime of violence under section 924(c)); *United States v. Barrett*, 937 F.3d 126, 130 (2d Cir. 2019)

(holding that Hobbs Act robbery conspiracy does not qualify as a categorical crime of violence under section 924(c)).  The Court's application of section 2B3.1(c) of the Guidelines, however, turns on other elements of the jury's verdict that are unaffected by *Davis* and its progeny, including whether Gonzalez "caused the death of [Garcia] through the use of that firearm" and whether the killing of Garcia "qualifie[d] as a murder . . . [under] section 1111 of the federal criminal code."  Trial Tr. 1950.  Most significantly, *Davis* and its progeny require that – for purposes of *conviction* – courts adopt the "*categorical* approach to determine whether an offense qualified as a crime of violence" by "disregard[ing] how the defendant actually committed his crime" and instead "imagin[ing] the idealized ordinary case of the . . . crime."  *Davis*, 139 S. Ct. at 2326 (emphasis added) (internal quotation marks omitted).  For purposes of *sentencing*, however, "the focus" of the Court's determination "is on the *specific* acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range."  U.S.S.G. § 1B1.3 App. Note 1 (emphasis added).  In light of the procedural posture and legal questions at issue in *Davis*, *Taylor*, and *Barrett*, the Court declines to adopt Gonzalez's expansive interpretation of those cases to find that the jury's factual determination regarding Count Three "no longer . . . exist[s]."  Gonzalez Resentencing Mem. at 8.  At the very least, the jury's findings with respect to Count Three bolster the Court's own conclusion that Garcia "was killed under circumstances that would

constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States."  U.S.S.G. § 2B3.1(c).

In short, the jury was justified in finding beyond a reasonable doubt – and the Court certainly finds by a preponderance of the evidence – that the killing of Garcia was something that Gonzalez "willfully and knowingly associate[d] himself . . . with" and "sought by some act to help make . . . succeed."  Trial Tr. 1953.  The Court is also persuaded that the murder was "within the scope of the jointly undertaken criminal activity, . . . in furtherance of that criminal activity, and . . . reasonably foreseeable in connection with that criminal activity."  U.S.S.G. § 1B1.3(a).  The Court therefore finds that the killing of Garcia constituted Gonzalez's "relevant conduct" under section 1B1.3(a)(1), and that Gonzalez is subject to the murder cross reference under section 2B3.1(c).

Of course, on some level, this legal analysis is somewhat academic in light of the Court's pronouncement that it would have imposed the same sentence even if it could be argued, or is in fact ultimately determined, that Gonzalez's total offense level is what defense counsel suggested in his sentencing submission.  As the Court made clear at sentencing, the aggregate sentence of 26 years' imprisonment "is a sentence that [it] would have imposed, regardless of how the [G]uidelines crack up with respect to the cross-reference for murder."  Resentencing Tr. 62:6–9.  Given Gonzalez's extensive criminal history, his significant role in the planning and execution of the offense, the fact

that he was on supervised release at the time of the robbery and that he persisted in selling narcotics well after the robbery, and his significant violations while in custody for this offense – including his possession of a dangerous weapon and several fights with other inmates – the Court concluded that an aggregate sentence of 26 years was "sufficient, but not greater than necessary to [accomplish] the purposes of [sentencing]" set forth in section 3553(a), regardless of the technical calculations and interpretations of any particular guidelines provisions.  18 U.S.C. § 3553(a); *see also United States v. Byors*, 586 F.3d 222, 225 (2d Cir. 2009) ("Following *United States v. Booker*, 543 U.S. 220 (2005), a district court has broad latitude to impose either a Guidelines sentence or a non-Guidelines sentence." (internal quotation marks omitted)); *United States v. Kent*, 821 F.3d 362, 367–68 (2d Cir. 2016) ("If [the Court of Appeals] identif[ies] procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." (internal quotation marks omitted)); *United States v. Cavera*, 550 F.3d 180, 197 (2d Cir. 2008) (en banc) (holding same).

*   *   *

For these reasons, as well as those stated on the record at the resentencing hearing held on February 15, 2023, the Court imposed a sentence of twenty years on Count One and six years on Count Two, to run consecutively, with credit for the time that Gonzalez has already served dating back to July 14, 2018 (minus any good time disallowances).  *See*

18 U.S.C. § 3585(b).  The Court also recommended that the Bureau of Prisons designate Gonzalez to serve his sentence at the United States Penitentiary in Canaan, Pennsylvania.

In addition, because Gonzalez has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court will not issue a certificate of appealability with respect to his section 2255 motion, *see Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from the Court's decision with respect to Gonzalez's section 2255 motion would not be taken in good faith and, therefore, Gonzalez may not proceed *in forma pauperis*, *see Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to terminate the motions pending in Case No. 11-cr-487-3, Doc. No. 212.

SO ORDERED.

Dated:     March 1, 2023
           New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation